COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DONALD PARKS,                                              )

                                                                              )

Appellant,                          )              
No.  08-04-00223-CV

                                                                              )

v.                                                                           )                    Appeal from the

                                                                              )

HARRIS
COUNTY CIVIL SERVICE                  )                 269th District Court

COMMISSION, HARRIS COUNTY                  )

SHERIFF=S
DEPARTMENT, and SHERIFF )                    of Harris County, Texas

TOMMY THOMAS, In His
Official Capacity,       )

                                                                              )                
(TC# 2003-34536)

Appellees.                          )

                                                                              )

 

 

O
P I N I O N

 

This is an appeal
from the trial court=s
order granting summary judgment in favor of Appellees, Harris County Civil
Service Commission, Harris County Sheriff=s
Department, and Sheriff Tommy Thomas, in his official capacity (ADefendants@)
and the denial of Appellant Donald Parks=
motion for summary judgment.  Mr. Parks
raises three issues on appeal:  (1) whether
the trial court erred in denying his motion for summary judgment and granting
the Defendants= motion
for summary judgment; (2) whether the trial court abused its discretion in
denying his motion to compel responses to written discovery; and (3) who are
the proper parties to an appeal from a Civil Service Commission decision.  We affirm.








Donald Parks was
terminated by the Harris County Sheriff=s
Department (Athe
Department@) on
February 7, 2001, for unprofessional conduct. 
Mr. Parks appealed his termination to the Harris County Sheriff=s Department Civil Service Commission (Athe Commission@).  After a hearing on September 25, 2002, the
Commission determined that the termination was not supported by sufficient
evidence.  The Commission overturned Mr.
Parks=
termination and ordered that he be reinstated immediately to his previous
position of deputy sheriff without back pay.  The Department was instructed to Acomply with all TCLEOSE [Texas
Commission on Law Enforcement Officer Standards and Education] rules and
regulations to bring Mr. Park=s
[sic] Texas Peace Officer=s
License to current and activated status.@  Further, the Commission stated, AMr. Parks=
return to work is contingent upon successful completion of return to duty
testing as set forth in Chapter II Section 4.9 of the Harris County Sheriff=s Office Department Manual.@

Mr. Parks
requested clarification on the Commission=s
return to work order.  At a hearing on
November 11, 2002, Mr. Parks requested a waiver or special dispensation from
the 1.5 mile run portion of the physical agility test, a test which was part of
the return to duty testing for employees who had been absent for more than one
year.  After deliberation, the Commission
determined that Mr. Parks was required Ato
take all of the tests that are required by the Sheriff=s
manual.@  By letter dated November 13, 2002, the
Commission confirmed its ruling that AMr. Parks= return to work is contingent upon
successful completion of all return to duty testing as set forth in Chapter II
Section 4.9 of the Harris County Sheriff=s
Office Department Manual.@








The Department
ordered Mr. Parks to see Dr. Charles B. Covert, a board certified psychiatrist
and licensed law enforcement officer, for a psychiatric evaluation.  On January 15, 2003, Dr. Covert evaluated Mr.
Parks.  Based on his evaluation, Dr.
Covert concluded that Mr. Parks was Anot
in satisfactory psychological and emotional health to perform the duties,
accept the responsibilities and meet the qualifications established by the
Harris County Sheriff=s
Department.@  Dr. Covert reported his negative finding for
Mr. Parks on a TCLEOSE form, Declaration of Psychological and Emotional Health,
' 217.1, or AL-3@ form. 
According to the Department, Dr. Covert=s
negative L-3 finding made Mr. Parks ineligible for reinstatement.  Mr. Parks had been temporarily placed on
the payroll during his return to duty testing. 
By letter dated February 17, 2003, Mr. Parks was terminated from the
Department based on the unsatisfactory psychological evaluation.  Mr. Parks appealed the second termination to
the Commission.

Mr. Parks obtained
a second opinion regarding his psychological evaluation from Dr. Rion
Hart, a clinical psychologist.  On
February 20, 2003 and March 4, 2003, Dr. Hart conducted an evaluation of Mr. Parks.  Based on Mr. Parks=
twenty years in law enforcement and no contradictory information, Dr. Hart
concluded that Mr. Parks possessed Aa
suitable level of emotional and psychological stability to adequately perform
the duties of a law enforcement officer.@

On May 21, 2003,
the Commission conducted a hearing on Mr. Parks=
termination.  After deliberation, the
Commission upheld the Department=s
decision.  The Commission later issued
its written order on May 22, 2003.  In
the order, the Commission found that Mr. Parks had violated the rules of the
Sheriff=s
Department and therefore, it was upholding Mr. Parks=
termination.








Pursuant to
Section 158.037, Mr. Parks appealed the Commission=s
decision to the 269th Judicial District Court of Harris County, Texas.  See Tex.Loc.Gov=t Code Ann. '
158.037 (Vernon 1999).  In his petition,
Mr. Parks asserted that the Commission ruled in excess of its authority.  In response, the Defendants filed an answer
and a motion for summary judgment, contending that substantial evidence existed
to sustain the Commission=s
decision.[1]  Mr. Parks filed a cross-motion for summary
judgment, arguing:  (1) that the
Commission=s
decision should be reversed because Dr. Covert=s
report should have been excluded as it was obtained in violation of the
Department=s written
policy in its manual, which stated that he could see the doctor of his choice,
thereby prejudicing a substantial right; and (2) that substantial evidence did
not support the Commission=s
decision.  Mr. Parks also argued that the
trial court=s denial
of essential discovery had precluded him from proving a violation of his
constitutional right to due process.  Mr.
Parks requested that in the event his motion for summary judgment was denied,
the trial court vacate its previous order to compel discovery of certain
information he sought.  Both parties
filed replies and supplemental responses to the respective motions.

On June 1, 2004,
the trial court granted the Defendants=
motion for summary judgment, upholding the Commission=s
decision and dismissing the Harris County Sheriff=s
Department as non sui juris.  That
same date, the trial court denied Mr. Parks=
motion for summary judgment.








In his first
issue, Mr. Parks argues that the trial court erred in denying his motion for
summary judgment and granting the Defendants=
motion.  Specifically, he contends that
the trial court erred in determining that there was substantial evidence to
support the Commission=s
decision.  He also contends that the
trial court should have reversed the case because the Commission violated
Section 158.0121 of the Texas Local Government Code by considering
Dr. Covert=s report,
which Mr. Parks asserts was obtained in violation of the Department=s procedures, therefore, the Commission=s decision resulted from an improper
procedure which implicated and prejudiced his substantial right to see a
physician of his choice under the Department=s
policy.

Standard
of Review

A trial court must
review a decision by a civil service commission under the substantial evidence
rule as provided under Section 158.0121. 
See Tex.Loc.Gov=t Code Ann. '' 158.037(a)
& (b), 158.0121 (Vernon 1999); see also Bexar County Civil Serv. Comm=n v. Casals, 63 S.W.3d 57, 59
(Tex.App.--San Antonio 2001, no pet.); Bustamante v. Bexar County Sheriff=s Civil Serv. Comm=n, 27 S.W.3d 50, 51 (Tex.App.--San
Antonio 2000, pet. denied).  Under the
substance evidence rule, the trial court hears and considers evidence to
determine whether there exists reasonable support for the Commission=s decision, however, the Commission
itself is the primary fact-finding body. 
See Firemen=s
& Policemen=s
Civil Serv. Comm=n
v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1984).








Whether the
Commission=s
decision was supported by substantial evidence is a question of law.  See id.; Arellano v. Texas
Employment Comm=n,
810 S.W.2d 767, 770 (Tex.App.--San Antonio 1991, writ denied).  Substantial evidence is more than a mere
scintilla of evidence, but less than a preponderance of the evidence.  Casals, 63 S.W.3d at 59.  As a result, the evidence supporting the
Commission=s order
may preponderate against the Commission=s
decision and still amount to substantial evidence.  Id. 
The reviewing court, whether the district court or the court of appeals,
may not set aside the Commission=s
decision because it would reach a different conclusion; it may only do so if
that decision was made without regard to the facts or the law and thus, was
unreasonable, arbitrary, or capricious.  Casals,
63 S.W.3d at 59-60; see also Brinkmeyer, 662 S.W.2d at 956 (the
reviewing court is concerned only with the reasonableness of the administrative
order, not its correctness).

Courts may grant
summary judgments in cases tried under the substantial evidence rule.  See Cruz v. City of San Antonio, 424
S.W.2d 45, 47 (Tex.Civ.App.--San Antonio 1968, no writ).  We review the trial court=s summary judgment de novo.  See Sasser v. Dantex Oil & Gas, Inc.,
906 S.W.2d 599, 602 (Tex.App.--San Antonio 1995, writ denied).  Summary judgment is proper when the movant
establishes there is no genuine issue of material fact and he is entitled to
judgment as a matter of law.  See Tex.R.Civ.P. 166a(c); Nixon v. Mr.
Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985).  When, as here, both parties move for summary
judgment and the trial court grants one motion and denies the other, we review
the summary judgment evidence presented by both sides and determine all
questions presented.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000); Jones
v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988).  When reviewing cross-motions for summary
judgment, we may render the judgment that the trial court should have
rendered.  FM Props. Operating Co.,
22 S.W.3d at 872.

Substantial
Evidence








We will first
consider whether or not there was substantial evidence to support the
Commission=s
decision.  The summary judgment evidence
included the transcript and exhibits from the May 21, 2003 hearing before the
Commission.  At the commission hearing,
Major Candy Henderson testified that as supervisor of the Human Resources
Bureau, she oversees personnel leave, payroll, and employee hiring issues for
the Department.  Major Henderson
explained that the Department as well as the State requires sworn peace
officers to undergo psychological testing. 
Under Departmental policy, if an employee has been absent for over a
year, that employee is required to undergo almost the entire re-application
process, including physical abilities testing, psychological testing, drug
testing, and firearms testing.  The
Department ordered Mr. Parks to see Dr. Charles Covert for the psychological
evaluation.  Dr. Covert issued a
negative L-3 declaration of psychological and emotional health.  Mr. Parks=
termination was based on his failure to comply with Chapter II, Section 4.9
(Return to Duty After an Extended Absence) of the Department=s manual.  According to Major Henderson, there is
nothing in the Department=s
policy that says Mr. Parks has the right to choose his examiner for the
psychological evaluation.

The Department
introduced into evidence Dr. Covert=s
negative L-3 declaration and the psychological evaluation he provided to the
Department.[2]  In his report, Dr. Covert stated
Mr. Parks=
psychological testing results as follows:

Mr. Parks took the Millon-II.  These results show that Mr. Parks= responses suggest not only an effort
to present a socially acceptable front, but also an intense resistance to
admitting personal short-comings.  His
profile indicated anxious conformity and fear of ridicule and contempt in an
individual who fears making mistakes with marked self-doubts and deflated
self-esteem which may result in a general seeking of a supportive partner or
institution such as his place of work or his church.  There was an apparent overconcern [sic] with
minor irrelevancies and preoccupation which serves to distract his attention
from intense feelings of anxiety and inadequacies.  There were indications of both
obsessive-compulsive and dependent personality traits.  On the Sacks Sentence Completion Test,
#15, he wrote, >I
would do anything to forget the time I got fired.=  On item #30, he said, >My
greatest mistake was getting fired.=  On item #60 he said, >The
worst thing I ever did was quit school.=

 








On the Guilford-Zimmerman
Temperament Survey summary, Mr. Parks described himself as so friendly that
he would find it difficult to prevent others from taking advantage of him.  He described a great need to please others
and to avoid unpleasantness.  He
indicated he almost never becomes angry no matter what the provocation.  The results indicate that this person would
find it extremely difficult to punish or discipline people, even if it were in
their best interest.  An individual who
is this friendly is best suited for jobs that call for a desire to help,
friendliness, a pleasant temperament and other factors.  However, the results further describe that >an individual who is this
friendly should not be placed in a job that calls for exercising authority, the
ability to criticize others, disciplining others, fighting, arguing,
competitiveness, managerial skills and law enforcement.= 
[Emphasis in original].

 

Mr. Parks also disclosed to Dr.
Covert that he had undergone psychiatric treatment for depression and had
received Zoloft, an antidepressant medication, as well as Lorzapam, a minor
tranquilizer.

Dr. Covert made
the following conclusions and opinions based on his background, training, and
experience as a board certified psychiatrist and a licensed law enforcement
officer:

Mr. Parks is not in satisfactory
psychological and emotional health to perform the duties, accept the
responsibilities and meet the qualifications established by the Harris County
Sheriff=s
Department.  He describes a pattern of
repeated breach of department policies and procedures combined with a marked
and demonstrated deceptiveness and evasiveness. 
Further, he demonstrates a lack of insight as well as impaired judgement
which, should he be rehired, would make continuing and further breaches of
policies and procedures foreseeable. 
Further, is a pattern of behavior, both privately and professionally, which
demonstrates the inability or unwillingness to accept responsibility.  This pattern of behavior has brought about
consequences which show some continuity, that is, failing to meet his
responsibilities to provide child support followed by having to be court-ordered
to do so and failing to follow the policies and procedures of his department
followed by a succession of complaints and disciplinary actions.  Further, his tendencies to be deceptive,
evasive, to deny and to rationalize his inability or unwillingness to meet the
minimum standards of both personal and professional behavior are further
indications of unsuitability for any law enforcement position.  Also, his tendency to blame others for his
shortcomings, whether blaming former wives or former employers, is further
indication of a pattern of unwillingness to accept responsibility.  The producing cause of these problems is Mr.
Parks= mixed
personality disorder with prominent antisocial, dependent and obsessive
compulsive personality traits, DSM IV Code 301.9.

 








Following Dr.
Covert=s
negative evaluation, Mr. Parks requested a second opinion from Dr. Rion Hart, a
clinical psychologist.  Dr. Hart
testified that he met with Mr. Parks twice. 
In evaluating Mr. Parks, Dr. Hart conducted a standard L-3 evaluation,
which included discussing the purpose and procedures of the evaluation.  He recalled interviewing Mr. Parks for
forty-five minutes to an hour to obtain background information, including his
developmental history, marriage, social life, and work history.  Dr. Hart then administered the Minnesota
Multiphasic Personality Inventory-2 (MMPI-2), a pathological test, and the
Clinical Analysis Questionnaire, which is designed to factor out all the
primary personality faulty characteristics that can be limited into
sixteen.  Dr. Hart also reviewed records
Mr. Parks had provided, including exhibits related to the disciplinary action
and suspension and his personnel evaluation reports over a    ten-year period.

Dr. Hart explained
that in this case, the validity of the tests indicated that Mr. Parks was not
forthcoming and made an effort to not fully represent his personality
functioning or characteristics, which Dr. Hart thought was not particularly
unusual for any police officer candidate being evaluated for an L-3 and was
common in people who are undergoing an evaluation of this nature with their job
on the line.








With regard to Mr.
Parks=
emotional functioning, Dr. Hart found that the testing results were negative
for any significant indicators of psychopathology or psychological problems.  Mr. Parks did receive an extreme score
on one scale which is associated with a tendency to be enthusiastic, happy-go
lucky, and impulsive.  Dr. Hart stated
that such individuals are found to be extroverts and bold in their approach to
life as well as thick-skinned and warmly social.  The more negative characteristics are
passivity, flightiness, and unrestrained self-centeredness.  According to Dr. Hart, these individuals can
fail to be reliable or dependable. 
However, they also answer items that indicate an above average of
maturity and emotional stability with the ability to remain in control over
their emotions.  Dr. Hart did not detect
any indication of an underlying hostility, aggressiveness, or anti-social characteristics
in Mr. Parks.  There was also no
indication that Mr. Parks suffers from guilt or self-doubt; rather Dr. Hart
found that Mr. Parks was generally satisfied with himself.

In terms of his
interpersonal functioning, the testing indicated that Mr. Parks is emotionally
composed without any sense of superficial abnormality.  He is generally trusting of others and seeks
to get along.  Dr. Hart also found that
he appears to possess a general sociability and prefers to be a member of a
group and involved in social interchange. 
The tests indicated that Mr. Parks can be lacking in polish or diplomacy
in dealing with others in that he has a tendency to be forthright and
unpretentious.  According to Dr. Hart,
the positive side of this characteristic was that Mr. Parks is not likely to be
manipulating in his interactions, but the negative side is that he may be
somewhat unskilled in carefully analyzing others=
motives and the impact of his behavior on them.

Dr. Hart concluded
that while Mr. Parks has some potential difficulty answering to some evidence
about flightiness or impulsivity, this did not indicate a degree of emotional
imbalance or a lack of emotional health or emotional personality
characteristics that would by themselves interfere with him continuing to
perform his duties as he has in the past. 
Dr. Hart also concluded that Mr. Parks=
evaluation did not reveal any significant indicators that would out and out
prevent him from working in law enforcement. 
Dr. Hart did qualify his interpretation of the testing results in that
they were not fully revealing in some areas of his functioning and may not have
been adequately identified.








Dr. Hart described
the Millon II test as a test that is directly connected to the diagnostics
manual used to diagnose psychological and psychiatric disorders.  The test is similar to the one that Dr. Hart
administered, the MMPI-2, which is often used for the same purpose.  According to Dr. Hart, the Millon is known in
the testing community for overstating psychopathology, but otherwise, it is a
good test if used judicially.  Dr. Hart
explained that the Guilford-Zimmerman Temperament Survey is a non-pathologic
test that looks at various temperaments or personality traits or characteristics
in individuals.  Dr. Hart agreed that
since he and Dr. Covert used different tests, Dr. Covert=s
results could be correct based on his examinations.  Dr. Hart has never used the Sacks Sentence
Completion Test, but would be surprised if a person who is attempting to get
his job back did not provide answers relating to his firing and his lack of
employment because that should be what is on the person=s
mind.

In some respects,
Dr. Hart agreed with Dr. Covert=s
report.  Dr. Hart believed there were
areas of overlapping in the testing, but he did not agree with Dr. Covert=s diagnosis of Mr. Parks as having an
emotional or personality disorder.  In
Dr. Hart=s
opinion, Mr. Parks is psychologically and emotionally fit to perform the duties
of a law enforcement officer.  In this
case, Dr. Hart considered the emotional and personality characteristics
indicated in the testing to be of secondary importance given Mr. Parks= twenty years of past behavior as a
veteran officer, which Dr. Hart believed was the best predictor of Mr. Parks= future behavior.  Dr. Hart acknowledged that he was not aware
that Mr. Parks had been diagnosed with depression in the past and had received
treatment, but agreed that this would be relevant when making a psychological
evaluation.








Mr. Parks
testified at the commission hearing about his psychological testing with
Dr. Covert.  According to Mr. Parks,
the session lasted nine hours and fifty minutes, during which time he took four
tests and had a brief twenty-minute conversation with Dr. Covert.  Mr. Parks spent five or six hours of
that time in waiting rooms.  Mr. Parks
requested a lunch break several times, but was told the doctor would be with
him shortly so he just waited. 
Mr. Parks stated that he was not trying to be deceptive in failing
to list his previous three places of employment because he went back thirty
years in his response.  Mr. Parks
described being badgered by Dr. Covert about previous terminations.  The Commission sustained the objection to Mr.
Parks=
testimony that Dr. Covert threatened to flunk him for being deceptive, yelled
at him, and slammed desk drawers.  After
the brief conversation, Dr. Covert told the secretary to administer more tests.  Half way through the test, Mr. Parks was told
to leave the room and was put in a closet to finish the test.  Mr. Parks maintained that he was completely
honest and fully disclosed information to Dr. Covert during his evaluation.








In reviewing the record,
it is clear that Dr. Hart controverted many of Dr. Covert=s opinions in his psychological
evaluation of Mr. Parks.  For instance,
Dr. Covert described Mr. Parks as having a mixed personality disorder with
prominent, anti-social, dependent, and obsessive compulsive personality
traits.  In contrast, Dr. Hart found no
significant indicators of psychopathology or psychological problems and
detected no indications of an underlying hostility, aggressiveness, or anti-social
characteristics in Mr. Parks.  According
to Dr. Covert, Mr. Parks=
test results indicated a degree of friendliness that would make it extremely
difficult for such a person to punish or discipline others, even if it were in
their best interest.  While Dr. Hart
similarly found that Mr. Parks received an extreme score on a scale associated
with a tendency to be enthusiastic, happy-go lucky, and impulsive, such
individuals can also be extroverts, thick-skinned, and warmly social.  Such individuals can also have an above
average maturity and emotional stability. 
Dr. Covert concluded that Mr. Parks was not in satisfactory
psychological and emotional health to perform the duties, accept the
responsibilities, and meet the qualifications established by the Harris County
Sheriff=s
Department.  On the other hand,
Dr. Hart concluded that Mr. Parks=
evaluation did not reveal any significant indicators that would out and out
prevent him from working in law enforcement. 
Dr. Hart believed that Mr. Parks was psychologically and emotionally fit
to perform the duties of a law enforcement officer, particularly given his twenty
years of past performance as a veteran officer.

Under the
applicable standard of review, the reviewing court cannot substitute its
judgment for that of the Commission.  See
Casals, 63 S.W.3d at 59-60.  In this
case, there is more than a mere scintilla of evidence to support the Commission=s decision to uphold Mr. Parks= termination for violation of the rules
contained in the Department=s
manual.  As the primary fact finder, the
Commission apparently resolved the conflicting evidence against Mr. Parks
and chose to believe Dr. Covert=s
negative psychological evaluation.  Thus,
we cannot agree with Mr. Parks=
contention that the Commission=s
decision was made without regard to the facts, and as such, was unreasonable,
arbitrary, or capricious.  See Casals,
63 S.W.3d at 59-60.

Mr. Parks also
contends that it is important to consider the Department=s
violation of its own policies and procedures when it required him to see Dr.
Covert instead of a doctor of his choosing as part of our substantial evidence
review.  Relying on City of San Antonio
v. Flores, 619 S.W.2d 601, 602 (Tex.Civ.App.--Houston [14th Dist.] 1981,
writ ref=d
n.r.e.), Mr. Parks argues that because his termination resulted from the
Department=s violation
of its own written policy, there is no substantial evidence to support his
termination.  Mr. Parks= reliance on Flores, however, is
misplaced.








In Flores,
a fireman was dismissed from the San Antonio Fire Department based on two
allegations:  a violation of the sick
leave policy and a violation of the civil service rules requiring good moral
character.  Flores, 619 S.W.2d at
602.  The Firemen=s
and Policemen=s Civil
Service Commission upheld the fireman=s
indefinite suspension, but the trial court reversed the Commission.  Id. 
The Flores Court affirmed the trial court=s
decision that there was no substantial evidence to support the Commission=s decision.  Id. at 603.  Specifically, the Flores Court noted
that the evidence showed that the fireman was off-duty and that, Ain practice, a fireman on sick or
injury leave is not required to be at home when his shift is not on duty.@ 
Thus, the Court concluded that the Commission=s
finding that the departmental rule was violated was not reasonably supported by
substantial evidence in the trial court. 
Id.  With regard to the
another allegation, the Court found the only evidence supporting the allegation
to be incredible and contradictory to the other sixteen witnesses called to
testify on behalf of the fireman.  Id.

Contrary to Mr.
Parks=
contention, the Flores Court did not reverse the Commission=s decision because the fire department
violated its own written policy.  Rather,
the Flores Court found there was no reasonable evidence to support the
Commission=s finding
that the fireman violated the department=s
rule based on the evidence at trial. 
Unlike Flores, we find that in this case there was substantial
evidence presented to support the Commission=s
decision to uphold Mr. Parks=
termination for violation of the Department=s
rules.

Violation
of Section 158.0121








Within Issue One,
Mr. Parks argues that even if substantial evidence supports the order, the
trial court should have reversed or remanded the case pursuant to Section
158.0121 of the Texas Local Government Code because the Commission=s decision resulted from an improper
procedure which implicated and prejudiced a substantial right.  Specifically, Mr. Parks contends that the
Commission violated Section 158.0121 by considering Dr. Covert=s report, which was obtained in
violation of the Department=s
procedures under Chapter II, Section 4.9 of the Department=s manual.  Mr. Parks asserts that under Section 4.9, he
had the right to see a doctor of his choice, but instead the Department
required him to see Dr. Covert in violation of its own written policy.

We repeat the
following procedural facts as they are relevant to resolution of Mr. Parks= particular complaint on appeal.  On October 2, 2002, the Commission issued an
order, finding that Mr. Parks=
February 7, 2001 termination was not supported by sufficient evidence.  The Commission overturned the termination and
ordered immediate reinstatement of Mr. Parks to his previous position as deputy
sheriff.  The order also provided the
following directives:

The Harris County Sheriff=s Department will submit the necessary
paperwork/forms to the Texas Commission on Law Enforcement Officer Standards
and Education (TCLEOSE), which will reflect the same.  The Harris County Sheriff=s Department will comply with all
TCLEOSE rules and regulations to bring Mr. Park=s
[sic] Texas Peace Officer=s
License to current and activated status. 
Deputy Parks is not awarded and >Will
Not= receive
back pay for the period of that the termination was in effect, i.e. from
February 7, 2001, through September 26, 2002. 
Mr. Parks= return
to work is contingent upon successful completion of return to duty testing as
set forth in Chapter II Section 4.9 of the Harris County Sheriff=s Office Department Manual.  All records relating to this disciplinary
action shall be removed from Mr. Park=s
[sic] file.[3]  [Emphasis in original].

 








On February 17, 2003, the
Department terminated Mr. Parks because he failed to complete Section 4.9
return to duty testing successfully by being declared not in satisfactory
psychological and emotional health to serve as a Harris County Sheriff=s Deputy as is required by
TCLEOSE.  In its final order, the
Commission upheld Mr. Parks=
termination based on violation of the rules contained in the County Sheriff=s Department Manual.

Mr. Parks asserts
that Dr. Covert=s report
was obtained in violation of the Department=s
policy, Section 4.9(C), which gave him the right to see a doctor of his
choice.  He contends that when the
Commission relied upon that report, the Department=s
procedural violation became a procedural irregularity of the Commission, which
requires reversal under Section 158.0121 because the Commission prejudiced his
substantial right to see a physician of his choice.  Under the Texas Local Government Code, even
if substantial evidence supports the commission=s
order, the trial court is directed to reverse and remand the commission=s decision if the petitioner=s substantial rights have been
prejudiced because the commission=s
findings, inferences, conclusions, or decisions are:

(A)       in violation of a constitutional or
statutory provision;

 

(B)       in excess of the commission=s authority;

 

(C)       made through unlawful procedure;

 

(D)       affected by other error of law;

 

(E)       not reasonably supported by substantial
evidence considering the reliable and probative evidence in the record as a
whole; or

 

(F)       arbitrary, or capricious, characterized
by abuse of discretion, or clearly an unwarranted exercise of discretion.

 

See Tex.Loc.Gov=t Code Ann. ''
158.0121(2), 158.0371(a).








Section 4.9 of the
Department Manual contains the procedures related to employees returning to
duty after an extended absence.  Under
Section 4.9(C), an employee seeking to return to active duty after an extended
absence must provide documentation of proficiency to perform the duties of the
previously held position.  Specifically,
Section 4.9(C) states:

Any employee seeking to return to
active duty after an extended absence shall be required to provide
documentation that he or she is physically and/or mentally capable to discharge
the duties of the position to which he or she is returning.  Such documentation is required regardless of
the reasons for the leave.  If the
reasons for the leave were medical (sickness or injury), the documentation must
be signed by an attending physician.  If
the reasons were not medical, the documentation may be signed by any physician.

 

Documentation must be provided before
the employee will be allowed to return to duty. 
The forms to be signed by a physician are available from the Human
Resources Bureau.  No other releases will
be accepted.[4]

 

In addition,
Section 4.9(D)(1)(b) provides that any employee who is absent from active duty
for any reason or combination of reasons for a period exceeding one year shall
be required to re-apply for employment. 
The rule also states:  AThe application process will entail all
testing currently required of applicants for the same position held by the
employee prior to the absence.@  New, or initial, applicants for licensure
must meet certain TCLEOSE standards and testing requirements as provided in
Section 217.1 of the Texas Administrative Code. 
See 37 Tex.Admin.Code
' 217.1 (2005).  Among the requirements, new applicants must:








[B]e examined by a psychologist,
selected by the appointing or employing agency, who is licensed by the Texas
State Board of Examiners of Psychologists. 
The psychologist must be familiar with the duties appropriate to the
type of license sought and appointment to be made.  This examination may also be conducted by a
psychiatrist.  The appointee must be
declared in writing by that professional to be in satisfactory psychological
and emotional health to serve as the type of officer for which the license is
sought within 180 days before the date of appointment by the agency.

 

See 37 Tex.Admin.Code '
217.1(12).

Further, to
qualify for appointment after a 180-day break, TCLEOSE regulations require the
agency to conduct a new declaration of psychological and emotional health.  37 Tex.Admin.
Code  '
217.7(e)(2).

Subsection I of
Section 4.9, outlines the process for employees seeking to return to duty after
extended absence.  Specifically, Subsection
I states the following:

An employee who has been absent for a
period which exceeds (15) consecutive work weeks . . . or six hundred (600)
working hours, for any reason or combination of reasons must provide an
appropriate release to return to duty and must undergo the required
testing.  [Emphasis added].

 








Clearly, Section
4.9 contemplates two separate and independent requirements for employees
seeking to return to duty after an extended absence.  First, the employee must obtain medical release
documentation from a physician who has reviewed the employee=s job description and can document that
the employee is capable of discharging the duties of the position.  Second, the employee must re-apply for his
former position, and in that application process, he must undergo all the
testing currently required of new applicants for the same position.  Current TCLEOSE regulations require new
applicants to submit to a psychological evaluation by a Department-selected
psychologist or psychiatrist and upon examination obtain a satisfactory
declaration of psychological and emotional health.  Contrary to Mr. Parks=
assertion, Section 4.9(C) simply does not provide him with a right to choose
the doctor of his choice for purposes of satisfying the psychological
evaluation requirement.  Therefore, the
Department did not violate Section 4.9(C) by requiring him to see Dr. Covert
for the psychological examination required under the application process.

Moreover, even if
we were to agree that the Department had violated its own policy, we are
unpersuaded that the Department=s
policy violation became a procedural irregularity or unlawful procedure of the
Commission by its reliance on the Covert report.  By its plain reading, under Section 158.0121,
the trial court considers only whether the petitioner=s
substantial rights were prejudiced because the commission=s findings, inferences, conclusions, or
decisions were made through unlawful procedure. 
See Tex.Loc.Gov=t Code Ann. '
158.0121(2)(C); see also Casals, 63 S.W.3d at 60 (a trial court shall
reverse or remand a case for further proceedings under Section 158.0121
if:  (1) the commission committed
one of the error listed in Section 158.0121; (2) a substantial right of the
petitioner was implicated; and (3) that right was prejudiced by the
error.).  Thus, a trial court is not
required to reverse the Commission=s
decision for an unlawful procedure that occurred at the agency level; rather an
unlawful procedure by the Commission itself provides the basis for a
reversal.  Based on this statutory
interpretation, we cannot agree with Mr. Parks that the Department=s violation of its policies and
procedures and the Commission=s
consideration of the Afruit
from this procedural violation@
amounted to a procedural irregularity by the Commission.

Accordingly, we
conclude the trial court did not err in granting the Defendants= motion for summary judgment and
denying Mr. Parks= motion
because the Defendants established, as a matter of law, that the Commission=s decision was supported by substantial
evidence and further, that the Commission had not committed any of the grounds
for reversal listed in Section 158.0121. 
Issue One is overruled.








MR.
PARKS=
REMAINING ISSUES

In Issue Two, Mr.
Parks complains that the trial court abused its discretion in denying his
motion to compel responses to written discovery designed to solicit information
necessary to show a violation of his constitutional rights.

In Mr. Parks= motion to compel, he asserted that he
had served on the Department and Sheriff Tommy Thomas, in his official
capacity, Interrogatories Nos. 1-4 and Request for Documents Nos. 1-8, but they
did not answer any substantive interrogatory and did not provide a single
document in response.  The Defendants
specifically objected to Interrogatories No. 2, which sought the identity of
all employees or applicants for employment with the Department who were
instructed to see Dr. Covert to undergo a psychiatric evaluation from January
1, 1997 to the present, and Nos. 3 and 4, which sought the amount of money and
the nature and value of the benefits Mr. Parks would have received from his
previous job.  The Defendants had also
objected to his eight requests for production of documents.  In requests Nos. 1 and 6, Mr. Parks sought
any documents and correspondence between the Sheriff=s
Department or any Harris County Department and Dr. Covert regarding Mr.
Parks.  Requests Nos. 2 and 3 sought
documents that would indicate the amount of money and nature and value of
benefits Mr. Parks would have received from his previous job.  Requests Nos. 4 and 5 sought departmental
manuals for the years 2002 and 2003. 
Requests Nos. 7 and 8 sought contracts between the Defendants and Dr.
Covert, as well as reports issued by Dr. Covert concerning any employee or
applicant for employment with the County, the Department, or any other Harris
County Department for the last five years. 
In his prayer, Mr. Parks requested that the trial court order the
Defendants to provide complete answers to the four interrogatories and the
eight requests for production of documents.








The trial court
entered an order on Mr. Parks=
motion to compel, in which it AORDERED
that Defendants Harris County Sheriff=s
Department and Sheriff Tommy Thomas, in his official capacity, provide full and
complete supplemental answers to Plaintiff Donald Parks=
Interrogatories for interrogatory Nos. 2, 3, and 4 within five (5) [days] of
this order.@  The trial court also ordered the Defendants
to Aprovide full and complete supplemental
responses and responsive documents to Plaintiff=s
Request for Production Nos. 1, 2, 3, 4, 5, 6, 7, and 8 within five (5) [days]
of this order.@  The order, however, also contained sections
with two columns designated as AOverruled@ and ASustained.@ 
The trial court placed check marks in both columns in reference to his
rulings on Interrogatories Nos. 3 and 4 and Requests for Production Nos. 2, and
3 and wrote Ain part@ next to each check mark.  The trial court also placed a check mark in
the AOverruled@ column for Request for Production Nos.
4 and 5, and marked Interrogatory No. 2 and Request for Production Nos. 1, 6,
7, and 8 as ASustained.@

Despite the rather
ambiguous check marks, the order nevertheless directs the Defendants to comply
with all the discovery requests.  Because
the trial court=s ruling
on the motion appears to grant the relief requested and thus, is not adverse,
Mr. Parks has failed to preserve any error for appellate review.  See Tex.R.App.P.
33.1.  Issue Two is overruled.








In Issue Three,
Mr. Parks requests clarity on the issue of who are the proper parties from a
Civil Service Commission decision.  Mr.
Parks concedes that A[t]he
parties do not dispute that the parties necessary to resolve the dispute were
present.@  Mr. Parks is, in effect, seeking an advisory
opinion as to whether Harris County would have been a proper party to the
lawsuit as well.  Because we are
prohibited from rendering advisory opinions, we may not address the merits of
Mr. Parks= third
issue.  See Tex.R.App.P. 47.1; Valley Baptist
Med. Ctr. v. Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000); Texas Ass=n of Bus. v. Texas Air Control Bd.,
852 S.W.2d 440, 444 (1993)(courts have no jurisdiction to issue advisory
opinions).  Issue Three is overruled.

We affirm the
trial court=s
judgment.

 

 

 

February
16, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.  











[1]
The Defendants also argued that the Harris County Sheriff=s Department was non sui juris
with no legal capacity to sue or be sued, and therefore was entitled to summary
judgment as a matter of law on all of Mr. Parks=
claims.





[2]
Dr. Covert did not testify at the commission hearing.





[3]
After a hearing for clarification on November 11, 2002, the Commission informed
the parties that it had Adetermined
that Mr. Parks= return
to work is contingent upon successful completion of all return to duty testing
as set forth in Chapter II Section 4.9 of the Harris County Sheriff=s Office Department Manual.@





[4]
Subsection G further details the documentation requirements, stating in part:

 

Employees shall obtain appropriate release forms from the
Human Resources Bureau.  The employee
shall take the release forms to the physician who will review the employee=s job description and document whether
the employee can perform the essential functions of the job, or whether the
employee will require an accommodation.